1  Richard L. Seabolt (SBN 67469)
   Suzanne R. Fogarty (SBN 154319)
2  Oliver E. Benn (SBN 244618)
   **DUANE MORRIS LLP**
3  Spear Tower, One Market Plaza, Suite 2200
   San Francisco, CA 94105-1127
4  Telephone: 415.957.3000
   Facsimile: 415.957.3001
5  E-mail:    RLSeabolt@DuaneMorris.com
              SRFogarty@DuaneMorris.com
6             OBenn@DuaneMorris.com

7  Attorneys for Defendant,
   ZYNGA INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBECCA SWIFT, individually, on behalf of the general public, and all others similarly situated, | Case No.: CV 09-5443 EDL |
| Plaintiff, | **ZYNGA INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION** |
| v. | Date:  July 26, 2011<br>Time:  9:00 a.m.<br>Judge: Elizabeth D. Laporte<br>Ctrm.: E – 15th Floor |
| ZYNGA GAME NETWORK INC.; ADKNOWLEDGE, INC.; D/B/A SUPER REWARDS; KITN MEDIA USA, INC., D/B/A SUPER REWARDS, | |
| Defendants. | Complaint Filed:   November 17, 2009 |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................................1

II. DISCUSSION ......................................................................................................................3

      A.    Swift Is Bound by the Arbitration Agreement in the Zynga TOS ..............................3

            1.      Online Contract Formation .............................................................................4

            2.      The Facebook Dialog Box .............................................................................6

            3.      Additional Ways of Viewing the TOS ..........................................................7

      B.    Zynga Did Not Waive or Forego Its Arbitration Rights ..............................................8

            1.      Zynga Did Not Waive Its Rights to Arbitration, As This Court Recently Recognized In a Case with the Identical Posture ............................8

            2.      Swift's Contractual Arguments Similarly Fail ............................................11

      C.    The TOS Is Not Unconscionable ...............................................................................13

III. CONCLUSION .................................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arellano v. T-Mobile USA, Inc.*
   2011 WL 1842712 (N.D. Cal. May 16, 2011) ...................................................................1

*Arriaga v. Cross Country Bank*
   163 F. Supp. 2d 1189 (S.D. Cal. 2001)............................................................................13

*AT&T Mobility LLC v. Concepcion*
   131 S.Ct. 1740 (April 27, 2011) .........................................................1-3, 5, 9-11, 13-14

*Bernal v. Burnett*
   2011 WL 2182903 (D. Colo. June 6, 2011)......................................................................1

*Bischoff v. DirecTV, Inc.*
   180 F. Supp. 2d 1097 (C.D. Cal. 2002) ...................................................................... 13-14

*Brookwood v. Bank of America*
   45 Cal.App.4th 1667 (1996) .............................................................................................6

*Burcham v. Expedia, Inc.*
   2009 WL 586513 (E.D. Mo. Mar. 6, 2009) ......................................................................5

*Cairo, Inc. v. Crossmedia Services, Inc.*
   2005 WL 756610 (N.D. Cal. Apr. 1, 2005) ......................................................................5

*Conover v. Dean Witter Reynolds, Inc.*
   837 F.2d 867 (9th Cir. 1988) ....................................................................................... 8-9

*Doctor's Associates, Inc. v. Casarotto*
   517 U.S. 681 (1996)..........................................................................................................5

*Fisher v. A.G. Becker Paribas Inc.*
   791 F.2d 691 (9th Cir. 1986) ............................................................................................8

*Gray v. Conseco, Inc.*
   2000 WL 1480273 (C.D. Cal. Sept. 29, 2000) ...............................................................13

*Hines v. Overstock.com, Inc.*
   668 F.Supp.2d 362 (E.D.N.Y. 2009) ................................................................................8

*Hubbard v. Dell Corporation*
   2005 WL 1968774 (Ill. App. Aug. 12, 2005) ...................................................................5

*In re Calif. Title Ins. Antitrust Litig.*
   2011 WL 2566449 (N.D.Cal. 2011) ....................................................................... 1-2, 9-10

*Letizia v. Prudential Bache Securities, Inc.*
 802 F.2d 1185 (9th Cir. 1986) ............................................................................8

*Mahfood v. QVC, Inc.*
 2008 WL 5381088 (C.D. Cal. 2008) ...................................................................3

*Major v. McCallister*
 302 S.W.3d 227 (Mo. Ct. App. 2009) ................................................................5

*Recursion Software, Inc. v. Interactive Intelligence, Inc.*
 425 F.Supp.2d 756 (N.D.Tex. 2006) ..................................................................5

*Register.com, Inc. v. Verio, Inc.*
 356 F.3d 393 (2d Cir. 2004) ......................................................................1-2, 4-5

*Schwartz v. Comcast Corp.*
 256 Fed. Appx. 515 (3d Cir. 2007) .....................................................................5

*Scott v. Pac. Gas & Elec. Co.*
 11 Cal.4th 454 (1995) ..........................................................................................4

*Shearson/American Express, Inc. v. McMahon*
 482 U.S. 220 (1987) ............................................................................................3

*Southwest Airlines Co. v. Boardfirst, LLC*
 2007 WL 4823761 (N.D. Tex. Sept. 12, 2007) ..................................................5

*Specht v. Netscape Comms.*
 306 F.3d 17 (2d Cir. 2002) ..........................................................................2, 4, 6

*Stewart v. Preston Pipeline Inc.*
 134 Cal.App.4th 1565 (2005) .............................................................................5

*Sullivan v. Lumber Liquidators, Inc.*
 2010 WL 2231781 (N.D. Cal. 2010) ................................................................13

*Ticketmaster LLC v. RMG Technologies, Inc.*
 507 F. Supp. 2d 1096 (C.D. Cal. 2007) ..............................................................5

*Villegas v. U.S. Bancorp*
 No. C 10-1762 RS (N.D.Cal. June 20, 2011) .....................................................2

*Villegas v. U.S. Bancorp*
 No. C 10-1762 RS (N.D. Cal. June 20, 2011) ) ...........................................1, 10

*Zarandi v. Alliance Data Systems Corp.*
 2011 WL 1827228 (C.D. Cal. May 9, 2011) ......................................................1

iii
ZYNGA'S REPLY BRIEF RE: MOTION TO COMPEL ARBITRATION
CV 09-5443 EDL

**Treatises**

Rest. 2d of Contracts §69(1)(a) ..........................................................................................4

Williston on Contracts §6:9 ...............................................................................................4

Corbin on Contracts §71 ....................................................................................................4

5 Witkin, Summary 10th (2010 supp.) Torts, §699 ........................................................12

## I. INTRODUCTION

In the past two months, this Court and others repeatedly have recognized that defendants, like Zynga, are entitled to compel arbitration and stay all court proceedings based on the U.S. Supreme Court's recent decision in *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740 (April 27, 2011) ("*Concepcion*"). *See, e.g., Arellano v. T-Mobile USA, Inc.*, 2011 WL 1842712 (N.D. Cal. May 16, 2011) (Alsup, J.); *Villegas v. U.S. Bancorp*, No. C 10-1762 RS (N.D. Cal. June 20, 2011) (Seeborg, J.); *In re Calif. Title Ins. Antitrust Litig.*, No. 08–01341 JSW, 2011 WL 2566449, at **2-3 (N.D. Cal. June 27, 2011) (White, J.); *see also Zarandi v. Alliance Data Systems Corp.*, 2011 WL 1827228 (C.D. Cal. May 9, 2011); *Bernal v. Burnett*, 2011 WL 2182903 (D. Colo. June 6, 2011). These cases have soundly rejected the same type of arguments that Plaintiff Rebecca Swift makes in her opposition.

Swift's responses to Zynga's motion to compel arbitration fall into two categories. First, Swift argues she did not agree to Zynga's terms of service ("TOS"). Second, Swift claims Zynga waived its right to arbitrate. Neither argument has any merit. Swift must proceed in arbitration.

First, Swift's brief claims that she did not assent to the TOS. But competent evidence to sustain such claim is noticeably absent. Swift did not submit a declaration to support her claim, and refused to be deposed, to avoid the inevitable concessions that undoubtedly would occur during cross-examination. Therefore, all of Swift's hypothetical arguments about what a user may or may not have seen, done, or understood in the context of Facebook Dialog Box are irrelevant, because Swift herself refuses to declare or testify under oath that she did not understand she was entering a binding agreement. Swift has produced **no** evidence to rebut the evidence offered in support of Zynga's motion or to support her claim that she did not agree to the TOS.

Even leaving that fatal defect aside, Swift is wrong in her contention that the law requires a check box with the words "I agree" for an online TOS to be binding. *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004) ("*Register.com*") ("There is no reason why the enforceability of the offeror's terms should depend on whether the taker states (or clicks) 'I agree'"). The test for assent is whether a user has notice of the existence of the proposed agreement terms, has a

meaningful opportunity to review them, is notified that the taking of a specified action manifests assent to the terms, and then takes the specified action. *Id*. As the case relied upon by Swift makes clear, the key question is whether the user reasonably should have known that taking the specified action signified assent. *Specht v. Netscape Comms.*, 306 F.3d 17, 29-30 (2d Cir. 2002) ("*Specht*").

Here, the Facebook Dialog Box (below) was short and simple to read. It explained that by clicking and proceeding to use YoVille, users would be accepting the Zynga TOS. The terms of service were highlighted in blue and hyperlinked so that users knew they could review them before proceeding. Swift duly clicked to accept.



(Seabolt Decl. Ex. A (Hanley Dep. 106:12-107:17 & Ex. 6 [ZS000114] (Please note this screenshot will look <u>substantially</u> different if printed in black and white rather than being viewed in color as a user would have seen it). Because Swift had notice that proceeding would signify assent, and then manifested assent by clicking, she is bound by the TOS.

Second, Swift makes a string of nearly identical equitable and contractual arguments concerning whether Zynga waived its right to arbitrate. Other judges of this Court already have rejected the identical arguments made by plaintiffs opposing motions to compel arbitration under *Concepcion*. *In re Calif. Title Ins. Antitrust Litig.*, *supra*, 2011 WL 2566449, at \*\*2-3; *Villegas v. U.S. Bancorp*, No. C 10-1762 RS (N.D.Cal. June 20, 2011). Simply stated, Zynga could not compel individual arbitration until the day the U.S. Supreme Court decided *Concepcion* and overruled

2

*Discover Bank*. Zynga was not required to engage in idle acts, filing motions contrary to then-controlling California case law. But as the Supreme Court made clear, "[a]rbitration is poorly suited to the higher stakes of class litigation" and that, absent an *express* agreement to the contrary, defendants cannot be forced to arbitrate on a classwide basis. *Concepcion*, 131 S.Ct. at 1751-1752. Zynga acted immediately. The day *Concepcion* was decided, Zynga cancelled the deposition of plaintiff Rebecca Swift that was scheduled for the next day, and filed the present motion to compel arbitration the following week. Consistent with the decisions of this and other courts post-*Concepcion*, Swift's waiver arguments should be rejected.

Swift's determination to proceed in Court rather than arbitration is seemingly motivated by the misguided belief that her putative class could ever be certified. She makes this argument despite her transactions not fitting within the time period specified in the complaint's class definition. *Compare* FAC ¶¶37-40 *with* ¶42. More importantly, her class claims depend on a wide variety of significantly different third-party ads that contained different statements with different meanings to different users. Individual issues predominate over – indeed dwarf – any common issues. *See, e.g., Mahfood v. QVC, Inc.*, 2008 WL 5381088, at \*\*4-5 (C.D. Cal. 2008) (denying certification where no evidence of a single, uniform misrepresentation that similarly deceived each putative class member).

## II. DISCUSSION

### A. Swift Is Bound by the Arbitration Agreement in the Zynga TOS

With its moving papers, Zynga established that Rebecca Swift had to accept the Zynga TOS before she played YoVille for the first time on April 6, 2009. Hanley Decl. ¶4. Swift has offered zero evidence to rebut this. In fact, she purposefully did not submit a declaration to support her position to circumvent the parties' stipulation that Zynga could take her deposition if she submitted a declaration with her opposition brief. Dkt. 63 ¶3. This purposeful course of action belies any notion that Swift could testify under oath that she did not see or agree to the Zynga TOS.[1] Swift's failure to present evidence is reason alone to disregard her claims that she is not bound by the TOS.

---

[1] The original version of Swift's opposition brief (Dkt. 65 at 7:19-20) contained a reference to Swift's declaration. But, after Zynga's counsel asked for a copy of the declaration and asked to confirm her deposition, Swift filed a notice of errata deleting the reference to Swift's declaration from the opposition brief. Dkt. 69 at 7:19-20.

Zynga's presentation of its TOS to its users satisfies black letter contract law regarding offer and acceptance. Zynga provided notice of the terms on which it would make its free games available to users, provided an opportunity to review them, and explained how to accept them. Whether classified as a "click-wrap," "modified click-wrap," or "browse-wrap" agreement, Swift is bound by Zynga's TOS under well-established law. Swift had the ability to review the terms of Zynga's TOS before assenting to them, and then was required to perform an action to signify her assent to them. Swift agreed to the terms of the TOS by clicking "Allow" and using YoVille.

### 1. Online Contract Formation.

The law of online contract formation is based on common law contract principles. "It is standard contract doctrine that when a benefit is offered subject to stated conditions, and the offeree makes a decision to take the benefit with knowledge of the terms of the offer, the taking constitutes an acceptance of the terms, which accordingly become binding on the offeree." *Register.com.,* 356 F.3d at 403 (citing Rest. 2d of Contracts § 69(1)(a); Williston on Contracts § 6:9; Corbin on Contracts § 71); *see also Scott v. Pac. Gas & Elec. Co.*, 11 Cal.4th 454, 464 (1995) (same).

The key question in terms of assent to a unilateral contract is whether the offeree had notice of the existence of the terms of the offer and how to signal acceptance. *Register.com,* 356 F.3d at 402; *see also* 1 Witkin, Summary of Calif. Law (2005) Contracts, § 182, p. 217 ("It is enough that the offeree has knowledge of the offer, i.e., knowledge that a particular offer has been made to him or her; it is immaterial that the offeree does not know its precise terms . . .")

In fact, the Second Circuit in *Register.com* distinguished its earlier decision in *Specht* (the case upon which Plaintiff relies) on this exact point. The court noted that in *Specht* "there was no way to determine that any [user] had seen the terms of the offer [and thus there] was no basis for imputing . . . knowledge of the terms" on the offeree. *Register.com,* 356 F.3d at 402. But the *Register.com* case was "critically different" because the offeree "saw the terms of Register's offer" and knew that "Register offered access subject to these restrictions." *Id.*

Here, the straw-man argument Swift attempts to manufacture – that Zynga needed a check box next to the words "I accept the Terms of Use . . ." (Opp. p. 14) – is simply not the standard for online contract formation. *Register.com,* 356 F.3d at 403 ("There is no reason why the

4

enforceability of the offeror's terms should depend on whether the taker states (or clicks) 'I agree.'") Instead, courts considering this very issue (including this Court) require that a user has notice of the existence of the proposed agreement terms, has a meaningful opportunity to review them, is notified that the taking of a specified action manifests assent to the terms, and then takes the specified action. *See, e.g., id.* at 402; *Cairo, Inc. v. Crossmedia Services, Inc.*, 2005 WL 756610, at **4–5, 2005 U.S. Dist. LEXIS 8450 (N.D. Cal. Apr. 1, 2005) (Ware, J.); *Burcham v. Expedia, Inc.*, 2009 WL 586513, at *2 (E.D. Mo. Mar. 6, 2009); *Ticketmaster LLC v. RMG Technologies, Inc.*, 507 F. Supp. 2d 1096 (C.D. Cal. 2007); *Southwest Airlines Co. v. Boardfirst, LLC*, 2007 WL 4823761, at **4-7 (N.D. Tex. Sept. 12, 2007); *Major v. McCallister*, 302 S.W.3d 227, 230 (Mo. Ct. App. 2009); *Hubbard v. Dell Corporation*, 2005 WL 1968774 (Ill. App. Aug. 12, 2005). As discussed in detail below, the type of "click-wrap" used by Zynga where the user has to "affirmatively click a box on the website" signifying assent to the contract terms before being allowed to proceed and engage with that website's services (*Burcham*, *supra*, 2009 WL 586513 at *2-*3) unquestionably binds Swift to the arbitration provision of the TOS.

Swift's further contention that there is a requisite level of understanding of the terms binding the user is based on 1955 case law that is no longer good law. Swift asserts that a "defendant must show 'that each party to the arrangement . . . fully and clearly comprehend that the agreement to arbitrate exists and binds the parties thereto." Opp. at 1:17-20 (citing *Commercial Factors Corp. v. Kurtzman Bros.*, 131 Cal.App.2d 133 (1955). This is simply not the law. First, the U.S. Supreme Court has held that the preemptive effect of the FAA precludes states from "singling out arbitration provisions for suspect status." *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996); *see also Concepcion*, 131 S.Ct. at 1746-1748. Second, a claim that a consumer did not see or read a contract does not affect whether it is binding. *Stewart v. Preston Pipeline Inc.*, 134 Cal.App.4th 1565, 1589 (2005).[2] Third, later California cases expressly state that a party will be bound by an

---

[2] *See also Burcham*, *supra*, 2009 WL 586513 at *2-*3; *Schwartz v. Comcast Corp.*, 256 Fed. Appx. 515, 518 (3d Cir. 2007) (evidence of consistent practice that user agreement was provided to customers was sufficient to overcome plaintiff's claim that he never saw or read any such agreement.); *Recursion Software, Inc. v. Interactive Intelligence, Inc.*, 425 F.Supp.2d 756, 783 (N.D.Tex. 2006) (where installation of software without assent to terms is impossible, claim that plaintiff did not see or read terms is without merit).

5

arbitration clause whether or not aware of the provision when the agreement was entered. *Brookwood v. Bank of America*, 45 Cal.App.4th 1667, 1674 (1996) (employee bound by contractual arbitration provision irrespective of whether she was aware of it when she signed contract). Therefore, Swift is incorrect to assert she had to "fully and clearly comprehend" the arbitration provision – a particularly incredulous claim considering she refused to submit a declaration or be deposed on it. She is bound by the entire TOS, including the arbitration provision, irrespective of the unsupported suggestion that she did not understand her obligation to arbitrate her claims.

### 2. The Facebook Dialog Box.

On April 6, 2009, when Swift clicked on a link in Facebook to launch YoVille for the first time, she was presented with the standard Facebook application Dialog Box. Hanley Decl. ¶4; Seabolt Decl. Ex. A (Hanley Dep. at 83:2-9). That box required the user to agree to allow YoVille to access the user's Facebook data and stated:

> By proceeding, you are allowing YoVille to access your information and you are agreeing to the Facebook Terms of Use in your use of YoVille. By using YoVille, you also agree to the YoVille Terms of Service.

Parker Decl. Ex. F. The words "Terms of Service" appeared in blue and were hyperlinked so that a user could review those terms before accepting them. Hanley Decl. ¶4. Therefore, Swift was on notice of the terms, had the opportunity to review them, and was informed that by clicking the "Allow" button and using YoVille she would manifest assent to its terms. In stark contrast to the *Specht* case where the court noted that "[t]he sole reference to SmartDownload's license terms … was located in text that would have become visible to plaintiffs only if they had scrolled down to the next screen" (306 F.3d at 23), here the short, simple Facebook Dialog Box explained the significance of Swift's decision to proceed. In her opposition, Swift falsely describes the Facebook Dialog Box as "grey fine print at the bottom of the page," and includes a blurry, skewed and faint reproduction, which is not representative of what a user would actually have seen. (*See* screenshot on p.3.)

Swift also makes several diversionary arguments in an attempt to assert that she is not bound by the TOS. First, she argues that Zynga "intentionally decided to deviate from the industry norm" and "to trick consumers into accepting its TOS." Opp. at p.14. This assertion is baseless. The

6

Dialog Box presented to Swift was Facebook's standard dialog box presented to users when they first wished to access any of the millions of applications available on Facebook.[3]  Seabolt Decl. Ex. A (Hanley Dep. at 83:2-9 (The Dialog Box "is Facebook's code . . . They provide Zynga and any other developer with, I guess you could call it a dashboard . . . [where] you can insert a URL to your terms of service so that they'll be surfaced to a new user in the allow app process."))  Therefore, rather than deviating from the industry norm, Zynga *followed* the industry norms set by Facebook for Facebook application developers to follow when new users signed up for their applications.  As discussed above, this Facebook Dialog Box conforms to the legal requirements for assent – notice of the existence of the terms, an opportunity to review them, and an explanation of the means by which those terms are accepted.  Swift could not proceed to play the Zynga games unless she first accepted the TOS.  Hanley Dec. ¶4; Seabolt Decl. Ex. A (Hanley Dep. at 100:19-101:15; 108:6-17).

Second, Swift argues that Zynga has no records that prove Swift clicked on the TOS.  This is a false premise. No specific record is required.  Users do not and cannot access YoVille without clicking through the Facebook entry box and affirming assent.  *Id*.  Moreover, Swift should not be heard to complain that Zynga does not have records when she does not claim under oath that she did not click through the Dialog Box.  *Id*.  Here, the undisputed evidence reveals that Swift could not have accessed YoVille without first being presented and accepting the Facebook Dialog Box.  Hanley Decl. at ¶4. Zynga's records reveal that Swift went through this registration process on April 6, 2009.  *Id*.; Seabolt Decl. Ex. A (Hanley Dep. at 100:19-101:15; 108:6-17).  Whether Swift actually read the terms is irrelevant – Swift was provided notice of their existence and had the opportunity to read them before providing assent.[4]

### 3. Additional Ways of Viewing the TOS.

In addition to viewing the TOS before assenting to it via the Facebook Dialog Box, there were multiple additional ways in which a Zynga user could access and review the TOS.  These

---

[3] According to Facebook's published statistics, "People on Facebook install 20 million applications every day."  http://www.facebook.com/press/info.php?statistics

[4] This also disposes of Swift's additional argument that the arbitration clause was "buried" on page 6 of 7.  Opp. at 15.  Because Swift is unwilling to submit a declaration or be deposed concerning her own experience, she cannot assert she read the YoVille TOS but did not see the arbitration provision.

7
ZYNGA'S REPLY BRIEF RE: MOTION TO COMPEL ARBITRATION
CV 09-5443 EDL

additional avenues further negate Swift's assertion that Zynga "tricked" its users and made the TOS inaccessible to users. The TOS is also presented in links in the following additional ways: (1) on Zynga's corporate website (www.zynga.com); (2) at the bottom of all game pages;[5] (3) during the payment process whenever a user purchased virtual currency using a credit card or similar traditional payment method; (4) when a user first accesses a Zynga game on a mobile device; (5) when users sign up to participate in Zynga's online discussion forums. Seabolt Decl. Ex. A (Hanley Dep. at 142:15-20 & 143:21-144:1; *see also* Hanley Dep. at 138-141). Thus, Zynga's TOS is presented to users on multiple occasions and constitutes more than the standard single "click wrap."

## B. Zynga Did Not Waive or Forego Its Arbitration Rights.

### 1. Zynga Did Not Waive Its Rights to Arbitration, As This Court Recently Recognized In a Case with the Identical Posture.

A party does not waive its right to arbitrate by failing to file an earlier motion to compel arbitration that would have been futile prior to a change in the law. *Conover v. Dean Witter Reynolds, Inc.*, 837 F.2d 867 (9th Cir. 1988) ("*Conover*").[6]

In *Conover*, the Ninth Circuit examined whether a defendant's two-year delay in moving to compel arbitration under section 10(b) of the Securities Exchange Act of 1934 amounted to waiver of its arbitration rights. The defendant had not initially moved to compel arbitration. However, while the case was still pending, the Supreme Court found that section 10(b) claims were in fact arbitrable. *Conover*, 837 F.2d at 867 (citing *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220 (1987)). The Ninth Circuit held it was "understandable" defendant did not move to compel arbitration at the onset of the case because, previously, section 10(b) claims had not been arbitrable. *Conover*, 837 F.2d at 867. Thus, the court held that the change in law justified defendant's delay in

---

[5] It is standard practice, well known to internet users, that terms of service are customarily available to users at all times through links at the bottom of web pages. See *Hines v. Overstock.com, Inc.*, 668 F.Supp.2d 362, 366 (E.D.N.Y. 2009) ("website terms and conditions of use are posted on the website typically as a hyperlink at the bottom of the screen") (citing *Register.com*, 356 F.3d at 428-430).

[6] *See also Letizia v. Prudential Bache Securities, Inc.*, 802 F.2d 1185, 1187, 1187 n.3 (9th Cir. 1986) (defendants had right to arbitrate where they "actively pursued their right to arbitrate as soon as they believed, in good faith, that they had such a right"); *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 697 (9th Cir. 1986) (it would have been "futile" for defendant to file a motion to compel arbitration at the outset of the case).

8
ZYNGA'S REPLY BRIEF RE: MOTION TO COMPEL ARBITRATION
CV 09-5443 EDL

filing a motion to compel arbitration and that defendant had not waived its right to arbitration. *Id*.

On this basis, this Court recently rejected the identical waiver argument advanced by a plaintiff in opposition to a defendant's post-*Concepcion* petition to compel arbitration. *In re Calif. Title Ins. Antitrust Litig*., *supra*, 2011 WL 2566449 at **2-3. In that class action, the plaintiffs' claims were subject to an arbitration clause that was silent as to whether class-action arbitration was permissible. *Id*. at *1. Following *Concepcion*, the defendants moved to compel arbitration. The plaintiffs countered that defendants had waived their right to arbitration by maintaining their defense in the Northern District since the case was filed in 2008. Judge White rejected this argument, holding that a pre-*Concepcion* motion would have been futile. *Id*. at *3. Arbitration would have been impermissible either on an individual or a class basis. *Id*. The Court held as follows:

> Plaintiffs argue that Defendants have waived their right to enforce the arbitration agreements in this matter because they failed to raise the issue previously in the course of litigation. A "party seeking to prove waiver of a right to arbitrate must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Britton v. Co-op Banking Group,* 916 F.2d 1405, 1412 (9th Cir.1990). "The party arguing waiver of arbitration bears a heavy burden of proof." *Id*.
>
> Although Defendants argue that moving to compel arbitration would have earlier been futile, Plaintiffs contend that the precedent of *Concepcion* does not change the law as applied in this matter as the applicable arbitration agreements are silent as to class-action waivers. However, the Supreme Court, analyzing an arbitration agreement silent as to class-actions, determined that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." [citations.] Therefore, prior to the ruling in *Concepcion*, in the absence of class-wide arbitration provision, class arbitration would not have been available. It therefore would indeed have been futile for Defendants in this matter to have moved to compel arbitration prior to the decision in *Concepcion*. Accordingly, the Court finds that Plaintiffs have failed to meet their burden to demonstrate that Defendants had an existing—and therefore waivable— right to compel arbitration. [citations.]

*Id*. at *2-*3.

Identical reasoning applies here. The YoVille TOS was silent as to whether arbitration could proceed on a classwide basis. Hanley Decl. Ex. A, p.17. The Universal TOS stated arbitration could only proceed on an individual basis. Hanley Decl. Ex. C, ¶¶12(d)-(e). Prior to *Concepcion*, Zynga would have engaged in a futile, idle act by attempting to compel arbitration because (1) a party "may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for

9
ZYNGA'S REPLY BRIEF RE: MOTION TO COMPEL ARBITRATION
CV 09-5443 EDL

concluding that the party agreed to do so"; and (2) *Discover Bank* prohibited class action waivers. *Id*. at *3 (citations omitted). Even if Zynga could have theoretically compelled arbitration on a classwide basis, it was under no obligation to do so because "[a]rbitration is poorly suited to the higher stakes of class litigation" and "to the extent it is manufactured by *Discover Bank* rather than consen[t], is inconsistent with the FAA." *Concepcion*, 131 S.Ct. at 1751, 1752.

But as soon as *Concepcion* was decided, Zynga immediately ceased all litigation activity, including cancelling the previously scheduled deposition of the plaintiff Rebecca Swift and filing the present motion.[7] Zynga therefore took every appropriate action as soon as it became apparent that it had the right to compel arbitration on an individual basis.

Moreover, as Judge White observed, the party arguing waiver has the burden of demonstrating prejudice, which cannot be met by mere "conclusory contention[s]." *Id*. (citing *Britton v. Co-op Banking Group,* 916 F.2d 1405, 1412 (9th Cir. 1990); *ATSA of Cal. v. Cont'l Ins.,* 702 F.2d 172, 175 (9th Cir. 1983)). As Judge Seeborg recently held in another post-*Concepcion* case, the party arguing waiver has a "heavy burden." *Villegas v. U.S. Bancorp*, No. C 10-1762 RS (June 20, 2011) (order granting motion to compel arbitration pursuant to *Concepcion* and rejecting waiver argument). While plaintiff claims that she will suffer "significant prejudice" (Opp. at 21:26), she has provided no declarations, evidence or other facts supporting a finding of substantial prejudice. Both Judges Seeborg and White concluded the mere passage of time since an action was filed was insufficient prejudice where the cases were nowhere near trial. *Villegas*, *supra*, at p. 2 ("Although this action has been pending for a significant period of time, it remains in the early stages of litigation"); *In re Calif. Title Ins. Antitrust Litig*., 2011 WL 2566449 at *3 ("Although this case has been litigated for some time, substantive discovery has only recently commenced and the trial is not set for well over a year.") Here, this case is indisputably in the early stages – no scheduling order has been entered, no trial date is set, and in the most recent case management statement, Swift estimated that trial should not take place until 2013. Dkt. 49. Simply stated, Swift

---

[7] While Zynga does not believe Swift disputes this account, Zynga refers the Court to the Declaration of Richard Seabolt in support of Zynga's opposition to plaintiff's Motion to Compel Discovery Responses, Dkt. No. 72, filed on the same day as the present brief, which contains a narrative of the parties' discovery including the canceling of Swift's deposition, at ¶2.

10

ZYNGA'S REPLY BRIEF RE: MOTION TO COMPEL ARBITRATION
CV 09-5443 EDL

has not met her "heavy burden" of showing prejudice in support of her waiver argument.

### 2. Swift's Contractual Arguments Similarly Fail.

#### (a) Zynga Did Not "Elect" To Proceed In Court Rather Than Arbitration.

Similar to the waiver argument, Swift argues that the TOS required Zynga to "make an election" to proceed in court or arbitration. This argument fails for several reasons.

First, for the reasons stated above, Zynga could not "elect" to arbitrate Swift's dispute at the time Swift filed her complaint. A motion to compel Swift to arbitrate her own dispute before the *Concepcion* case would have been an idle and futile act.

Second, in making her argument, Swift ignores the YoVille TOS altogether and ignores the plain language of the Universal TOS. The YoVille TOS contained no such "election" language at all. It stated that all claims that a user could bring had to be resolved in arbitration. Hanley Decl. Ex. A at p.17. For the reasons already discussed, Zynga could not compel Swift to arbitrate her own dispute at that time. With respect to the Universal TOS, Swift argues that Zynga already "made an election" to proceed in this Court. Opp. at 16. Swift cites the language of the TOS that "either you or Zynga may elect to have the Dispute **(except those Disputes expressly excluded below)** finally and exclusively resolved by binding arbitration." Hanley Decl. Ex. C at ¶12(d) (emphasis added). But one of the "Disputes expressly excluded" is found in Paragraph 13(b). That paragraph stated that to the extent the TOS's class action waiver was unenforceable "neither you nor Zynga will elect to arbitrate" that dispute. Hanley Decl. Ex. C at ¶13(b).

Because class action waivers were unenforceable until *Concepcion* overturned the California Supreme Court's *Discover Bank* decision, Zynga contractually could *not* elect to arbitrate the dispute. However, once *Concepcion* was issued, Paragraph 13(b) was no longer operative and Zynga made the election to proceed with arbitration. For that reason, Swift's argument that Zynga "made an election" to proceed in this Court ignores the plain meaning of the TOS.

#### (b) Swift's Claims Are Not For "Theft."

For the first time in the nearly two years since filing of this case, Swift argues that her claims arise from "theft." Opp. pp. 17-18. Swift does this to attempt to meet an exception to the arbitration

11

ZYNGA'S REPLY BRIEF RE: MOTION TO COMPEL ARBITRATION
CV 09-5443 EDL

provision in the Universal TOS (but not the YoVille TOS) for a "Dispute related to, or arising from, allegations of theft, piracy, invasion of privacy or unauthorized use." But nowhere in the Complaint do the words "theft," "steal" or any derivatives (or synonyms) of those words appear. Swift does not allege a cause of action for theft/conversion.[8] Swift's claims are grounded in alleged false advertising, misrepresentations, or fraud – not "theft." *See* Dkt. 49, p.2 (Joint CMC Statement, Pl.'s Statement – "Specifically, Plaintiff has alleged that the special offer transactions contained within Zynga's games are false and misleading, and are designed to cause consumers to pay for goods and services that they do not need or want, and which misrepresent the terms of those transactions").

Moreover, neither the YoVille TOS nor the Universal TOS except the type of claims at issue here. First, the YoVille TOS does not contain any arbitration exception for theft at all. *See* Hanley Decl. Ex. A at p.17. Second, the Universal TOS provides that no "Dispute related to, or arising from, allegations of theft, piracy, invasion of privacy or unauthorized use" shall be subject to arbitration. Hanley Decl. Ex. C at ¶12(f)(2). In the context of an online game application that offers virtual goods (*see* FAC ¶2), it is apparent that "theft" and the other terms in that clause refer to hacking or similar unauthorized interference with Zynga's games, not the type of claims in this case.

Simply stated, Swift cannot avoid arbitration by re-characterizing her claims as "theft."

### (c) Swift Misreads the Universal TOS's Arbitration Exception.

Swift also argues that the Universal TOS (but not the YoVille TOS) exempts this action from arbitration based on a skewed interpretation of another of its exceptions. Opp. at pp. 18-19. That provision, part of Paragraph 13(b) of the Universal TOS, provides as follows:

> If Section 12(e) is found to be illegal or unenforceable then neither you nor Zynga will elect to arbitrate any Dispute falling within that portion of Section 12(e) found to be illegal or unenforceable and such Dispute shall be decided by a court of competent jurisdiction within the County of San Francisco, State of California, United States of America, and you and Zynga agree to submit to the personal jurisdiction of that court.

Hanley Decl. Ex. C at ¶13(b). Paragraph 12(e) provided a class action waiver so that the parties could only proceed in arbitration on an individual basis. *Id*. at ¶12(e). Swift argues that because the

---

[8] Conversion requires the defendant's taking of property in a "manner inconsistent with plaintiff's property rights." 5 Witkin, Summary 10th (2010 supp.) Torts, § 699, p. 168 (citing *Fremont Indem. Co. v. Fremont General Corp*. (2007) 148 Cal.App.4th 97, 119.

12
ZYNGA'S REPLY BRIEF RE: MOTION TO COMPEL ARBITRATION
CV 09-5443 EDL

individual arbitration requirement may have been unenforceable under California law at the time she filed the present lawsuit, Zynga somehow agreed that the dispute had to be decided by this Court.[9]

But the provision does not say that. Instead, it says that if the class action waiver is found to be unenforceable, the dispute would proceed to court. The provision requiring individual arbitration has never been found to be unenforceable – and, most importantly, never will. *Concepcion* squarely upholds Zynga's statutory right under the FAA to arbitrate Swift's claim individually.

### C. The TOS Is Not Unconscionable.

Swift, again quoting the Universal TOS but ignoring the YoVille TOS, argues that the distinction between the types of disputes that must be arbitrated versus those that may not be arbitrated renders the Universal TOS substantively unconscionable.

Swift's only support for this position derives from two employment cases where the contracts at issue required arbitration of nonwaivable "statutory civil rights." This Court, analyzing those two cases, noted that no known California cases held the unconscionability analysis was "more broadly applicable" than to that specific context. *Sullivan v. Lumber Liquidators, Inc.*, 2010 WL 2231781, at *6 (N.D. Cal. 2010) (Chesney, J.) (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83 (2000); *Mercuro v. Superior Court*, 96 Cal. App. 4th 167, 179 (2002).)

In fact, courts that have arbitration clauses similar to the Zynga TOS have held them not to be unconscionable. *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1109-1110 (C.D. Cal. 2002) ("*Bischoff*"); *Arriaga v. Cross Country Bank*, 163 F. Supp. 2d 1189, 1194-1195 (S.D. Cal. 2001); *Gray v. Conseco, Inc.*, 2000 WL 1480273, at *4 (C.D. Cal. Sept. 29, 2000). In *Bischoff*, the plaintiffs in a class action against DirecTV argued that an arbitration provision was unconscionable because it was one-sided and lacked mutuality. 180 F.Supp.2d at 1109. The plaintiffs argued that most if not all claims brought by a consumer would be subject to arbitration, but many claims that DirecTV might bring, including violations of intellectual property rights, DirecTV's licenses, or

---

[9] Swift essentially re-writes the provision from "If Section 12(e) *is found* to be illegal or unenforceable" to "If Section 12(e) *could have been found* to be illegal or unenforceable," causing the arbitration analysis to turn on what date the lawsuit was filed. Under this re-writing, if Swift had filed her putative class action one day before *Concepcion* was issued, she would have to proceed in court, but if she instead filed it one day after *Concepcion* was issued, she would be subject to individual arbitration. The provision simply does not support such an interpretation.

ZYNGA'S REPLY BRIEF RE: MOTION TO COMPEL ARBITRATION
CV 09-5443 EDL

privacy/wiretapping laws could not be brought in arbitration. *Id*. The court rejected the argument because, first, as a general matter, the provision was not "so one-sided as to 'shock the conscience'." *Id*. Second, non-mutuality would not render a provision unconscionable where "there is some consideration on both sides." *Id*. Third, foreshadowing *Concepcion*, the court held that "a contrary rule would impose a special burden on agreements to arbitrate and therefore conflict with the federal policy favoring arbitration." *Id*.

The Universal TOS has similar arbitration exceptions to the contract in *Bischoff*, and the same reasoning applies here. Paragraph 12(f) excepts disputes relating to (1) either party's intellectual property rights; (2) disputes relating to "allegations of theft, piracy, invasion of privacy or unauthorized use;" or, (3) claims for injunctive relief. There is nothing inherently unfair about this provision, let alone something "that shocks the conscience." Swift has not identified any reason why she cannot vindicate her claims in arbitration. Second, there may be issues relating to privacy, hacking, theft of virtual currency, and intellectual property, where a plaintiff could conceivably bring a claim against Zynga that would not be subject to arbitration. Moreover, as the Supreme Court explained in *Concepcion*, the fact that an individual arbitration requirement may result in some "small-dollar claims" going unresolved, that cannot override the fact that class arbitration, unless specifically agreed to by both parties, "is inconsistent with the FAA." 131 S.Ct. at 1752.

Therefore, Swift's perception of the arbitration provision's lack of mutuality is simply not a basis to hold it unconscionable.

### III. CONCLUSION

For all the foregoing reasons, Zynga respectfully requests that the Court grant Zynga's motion to compel arbitration and stay the pending action pending resolution of Swift's claims.

Dated: July 12, 2011　　　　　　　　　　**DUANE MORRIS LLP**

By:　/s/*Richard L. Seabolt*
　　　Richard L. Seabolt

Attorneys for Defendant,
ZYNGA INC.

DM1\2724374.2