**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

REBECCA SWIFT, et al.,

               Plaintiffs,

    v.

ZYNGA GAME NETWORK, INC.; et al.,

               Defendants.

_____/

No. C-09-5443 EDL

**ORDER GRANTING ZYNGA'S MOTION TO COMPEL ARBITRATION; GRANTING IN PART AND DENYING IN PART OTHER DEFENDANTS' PARALLEL MOTION TO STAY; DENYING AS MOOT: (1) MOTION TO COMPEL DISCOVERY, (2) MOTION TO HEAR CROSS-MOTION TO STAY DISCOVERY ON SHORTENED TIME, (3) MOTION TO STAY DISCOVERY; GRANTING MOTION TO SEAL**

**I.**     **Introduction**

       This is a purported class action brought by Plaintiff Rebecca Swift on behalf of herself and a class of similarly situated individuals who were allegedly deceived by Defendant Zynga Game Network, Inc.'s "special offer" transactions, developed by Defendants Acknowledge Inc. and Kitn Media USA, Inc. and offered in connection with Zynga's free online video games.  The complaint, originally filed on November 17, 2009 and amended on February 10, 2010, makes claims for unfair competition in violation of California Business & Professions Code section 17200, the California Consumer Legal Remedies Act, and Unjust Enrichment.

On May 5, 2011, Defendant filed a Motion to Compel Arbitration and Stay Litigation in light of the United States Supreme Court's April 27, 2011 decision in <u>AT&T Mobility LLC v. Concepcion</u>, 131 S.Ct. 1740 (2011), which held that the Federal Arbitration Act preempts California law regarding the unconscionability of arbitration provisions restricting class action claims. Zynga claims that although the contractual arbitration provision governing the parties' relationship did not allow it to compel arbitration at the time the case was filed, in light of this recent change in the law arbitration should be compelled and the litigation stayed. Plaintiff opposes on the bases that she did not assent to the arbitration provision that Zynga now relies on, and even if she did the terms of service that contain the arbitration provision do not require arbitration of her claims, and Zynga waived its right to compel arbitration. For the following reasons and for the reasons discussed during oral argument on July 26, 2011, Zynga's motion is GRANTED and the litigation  stayed as to Zynga.

Defendants Acknowledge and Kitn (collectively the "Super Rewards Defendants") filed a joinder to Zynga's motion on the basis that they are agents with standing to enforce the arbitration clause, that the claims against them are closely related to the contract containing the arbitration clause, or alternatively that the litigation should be stayed as to them even if the arbitration provision only applies to Zynga. Plaintiff separately opposes joinder of the Super Rewards Defendants in Zynga's motion. The Super Rewards Defendants' Joinder and Request to Stay is GRANTED IN PART AND DENIED IN PART, and the litigation is STAYED as to all defendants.

Finally, the parties also filed a motion to compel discovery responses set to be heard on August 2, and a cross-motion to stay discovery and to hear the cross-motion on shortened time. These motions are MOOT in light of the Court's decision to stay the litigation in favor of arbitration

**II.      Background Facts**

Plaintiff's claims relate to harm she allegedly suffered after accepting certain "special offers" in connection with Zynga's online video game applications that she was using within the Facebook network. FAC ¶¶ 6, 25, 36-41. Two different Terms of Service ("TOS") agreements are arguably relevant to Ms. Swift's claims.

First, in April 2009, (the timeframe that Plaintiff alleges that she accepted the fraudulent

2

1  special offers at issue), the YoVille TOS[1] governed the terms and conditions of use of all Zynga

2  products and contained the following arbitration provision:

> You agree that any suit, action or proceeding arising out of or relating to these
> Terms of Use or any of the transactions contemplated herein or related to the
> Service or any contests or services thereon (including without limitation,
> statutory, equitable or tort claims) shall be resolved solely by binding arbitration
> before a sole arbitrator under the rules and regulations of the American
> Arbitration Association("AAA"); provided, however, that notwithstanding the
> parties' decision to resolve any and all disputes arising under these Terms of Use
> through arbitration, Zynga may bring an action in any court of applicable
> jurisdiction to protect its intellectual property rights or to seek to obtain injunctive
> relief or other equitable [sic] from a court to enforce the provisions of these
> Terms of Use or to enforce the decision of the arbitrator.  The arbitration will be
> held in San Francisco . . .

10  Hanley Decl. Ex. A p. 17.  The YoVille TOS is silent as to whether parties may aggregate claims or

11  pursue a class action arbitration.

12      The YoVille TOS further provides that Zynga had the right to change the terms at any time,

13  that use after notice of the change in terms constitutes acceptance of the changes, and that the

14  changes take effect after notice by posting the changes on "Zynga's Service or by any other method

15  of notice Zynga deems appropriate."  Id. at 14.  The first time that a user such as Plaintiff decided to

16  start playing a Zynga game through a social media platform such as Facebook, he or she was

17  presented with a screen request stating: "Allow Access? Allowing YoVille access will let it pull

18  your profile information, photos, your friends' info, and other content that it requires to work."

19  Underneath, there is a large "Allow" button, a smaller "cancel" link, and smaller grey font stating

20  "By proceeding, you are allowing YoVille to access your information and you are agreeing to the

21  [blue hyperlink] Facebook Terms of Service in your use of YoVille.  By using YoVille, you also

22  agree to the YoVille [blue hyperlink] Terms of Service."  Parker Decl. Ex. F;[2] Seabolt Decl. Ex. A;

23  Reply at 2 (image of screen shot).  There is no record of whether Plaintiff or anyone else ever

24  clicked on the blue hyperlinked YoVille Terms of Service, which Zynga'S 30(b)(6) witness testified

25  it did not track.  Parker Decl. Ex. E at 85-86, 92, 112, 126.

---

27  [1] The YoVille TOS was amended in May 2009, but the provisions relevant to this dispute were
not changed at that time.  Compare Hanley Decl. Ex. A p. 16-17 with Ex. B p. 17.

28  [2] Plaintiff has filed a motion to seal Exhibits A-D to the Parker Declaration on grounds that
Defendants designated them "Confidential" pursuant to the parties' stipulated protective order.
Defendants, as the designating party, have complied with Local Rule 79-5(d) and the Motion to Seal
is GRANTED.

**United States District Court**
For the Northern District of California

1       Then, on August 1, 2009, Zynga implemented its Universal TOS, which was intended to

2  supercede the YoVille TOS.  Hanley Decl. Ex. C.  The Universal TOS provides:

4          With respect to any disputes or claims not subject to informal dispute resolution
or arbitration (as set forth below), you agree not to commence or prosecute any

5          action in connection therewith other than in the state and federal courts in San
Francisco County . . .

7  Hanley Decl. Ex. C. ¶ 12(a).  The Universal TOS further provides:

8          Binding Arbitration.  If you and Zynga are unable to resolve a Dispute through
informal negotiations, either you or Zynga may elect to have the Dispute (except

9          those disputes expressly excluded below) finally and exclusively resolved by
binding arbitration.  Any election to arbitrate by one party shall be final and

10        binding on the other.  YOU UNDERSTAND THAT ABSENT THIS
PROVISION, YOU WOULD HAVE THE RIGHT TO SUE IN COURT AND

11        HAVE A JURY TRIAL . . . The determination of whether a Dispute is subject to
arbitration shall be governed by the Federal Arbitration Act and determined by a

12        court rather than an arbitrator . . . Except as otherwise provided in this
Agreement, you and Zynga may litigate in court to compel arbitration, stay

13        proceedings pending arbitration, or to confirm, modify, vacate or enter judgment
on the award entered by the arbitrator.

15  Hanley Decl. Ex. C. ¶ 12(d).  Exceptions to the informal dispute resolution and arbitration provision

16  include: "(1)any Disputes seeking to enforce or protect, or concerning the validity of, any of your or

17  Zynga's intellectual property rights; (2) any Dispute relating to, or arising from, allegations of theft,

18  piracy, invasion of privacy or unauthorized use; and (3) any claim for injunctive relief."  Id. ¶ 12(f).

19       The Universal TOS also forbids arbitration on a class basis:

20          You and Zynga agree that any arbitration shall be limited to the Dispute between
Zynga and you individually.  To the full extent permitted by law, (1) no

21          arbitration shall be joined with any other; (2) there is no right or authority for any
dispute to be arbitrated on a class-action basis or to utilize class action

22          procedures; and (3) there is no right or authority for any Dispute to be brought in
a purported representative capacity on behalf of the general public or any other

23          persons.

24  Id. ¶ 12(e).  However, section 13(b) provides that, "If Section 12(e) is found to be illegal or

25  unenforceable, then neither you nor Zynga will elect to arbitrate any Dispute falling within that

26  portion of Section 12(e) found to be illegal or unenforceable and such Dispute shall be decided by a

27  court of competent jurisdiction within the County of San Francisco, State of California, United

28  States of America and you and Zynga agree to submit to the personal jurisdiction of that court."

4

**United States District Court**

For the Northern District of California

1   According to Plaintiff, Zynga did not provide her with sufficient notice that the arbitration

2   provision had changed in August 2009.  Parker Decl. Ex. E at 123-24, 129.  After Plaintiff sued

3   Zynga in this Court, Zynga moved to dismiss on grounds that her claims were barred by the

4   Communications Decency Act and should be dismissed for lack of specificity, but prior to the

5   Supreme Court's Concepcion decision, did not seek to compel arbitration and did not assert an

6   affirmative defense relating to arbitration or the ban on class actions contained in the Universal TOS.

7   **III.    Motion to Compel Arbitration**

8       **A.    Legal Standard**

9       Zynga contends that, when this case was filed, the California Supreme Court's decision in

10  Discover Bank v. Superior Court, 36 Cal. 4th 148 (2005) precluded it from compelling arbitration

11  pursuant to the arbitration clauses in the YoVille and/or Universal TOS.  However, it argues that the

12  United States Supreme Court's Concepcion decision overturned the Discover Bank rule and now

13  requires courts to give full force and effect to contractual agreements and enforce bilateral

14  arbitrations except where the parties explicitly contracted to the contrary.  AT&T Mobility LLC v.

15  Concepcion observed:

16          The "principal purpose" of the FAA is to "ensur[e] that private arbitration
            agreements are enforced according to their terms."  This purpose is readily
17          apparent from the FAA's text.  Section 2 makes arbitration agreements "valid,
            irrevocable, and enforceable" as written (subject, of course, to the saving clause);
18          § 3 requires courts to stay litigation of arbitral claims pending arbitration of those
            claims "in accordance with the terms of the agreement;" and § 4 requires courts to
19          compel arbitration "in accordance with the terms of the agreement" upon the
            motion of either party to the agreement (assuming that the "making of the
20          arbitration agreement or the failure ... to perform the same" is not at issue).  In
            light of these provisions, we have held that parties may agree to limit the issues
21          subject to arbitration, to arbitrate according to specific rules, and to limit with
            whom a party will arbitrate its disputes.

22

23  131 S.Ct. 1740, 1748 -1749 (2011) (internal citations omitted).  Conception also notes that § 2 of the

24  FAA "permits arbitration agreements to be declared unenforceable 'upon such grounds as exist at

25  law or in equity for the revocation of any contract.'  This saving clause permits

26  agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as

27  fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive

28  their meaning from the fact that an agreement to arbitrate is at issue."  Id. at 1746.  Conception

    ultimately held that the FAA preempts California's Discover Bank rule that class arbitration waivers

**United States District Court**
For the Northern District of California

1  in consumer contracts are unenforceable as unconscionable, and instructed that such waivers should

2  be enforced.  Id. at 1753.  The Court further held that, unless the parties explicitly agreed to class

3  arbitration, arbitrations could only proceed on an individual basis.  Id.

4        Zynga argues that in light of Concepcion it can now compel arbitration of Plaintiff's claims

5  in this case on an individual basis pursuant to the YoVille and Universal TOS.  In the wake of

6  Concepcion, other courts of this district have compelled arbitration and stayed cases based on its

7  change in the law.  See, e.g., Arellano v. T-Mobile USA, Inc., 2011 WL 1842712 (N.D. Cal. May

8  16, 2011) (Alsup, J.); Villegas v. U.S. Bancorp, No. C 10-1762 RS (N.D. Cal. June 20, 2011)

9  (Seeborg, J.); In re Calif. Title Ins. Antitrust Litig., 2011 WL 2566449, at **2-3 (N.D. Cal. June 27,

10  2011) (White, J.).

11      **B.**     **Analysis**

12        According to Zynga, Plaintiff accepted the YoVille TOS when she first logged on to play the

13  YoVille game in April 2009 by clicking the "Accept" button described above.  Hanley Decl. ¶ 3-4,

14  Ex. A.  The YoVille TOS requires arbitration, but is silent on whether the arbitration can proceed on

15  a classwide basis.  Hanley Ex. A at 17.  Additionally, Zynga contends that, as a result of Plaintiff's

16  assent to the YoVille TOS, which stated that the terms could be changed and continued use

17  constituted acceptance, Plaintiff thereafter accepted and became bound by the Universal TOS, which

18  governs.  Hanley Decl. ¶ 6, Ex. C p.1.  The Universal TOS explicitly required that Plaintiff's claims

19  be arbitrated on an individual basis and that she waived her right to class arbitration.  Hanley Decl.

20  Ex. C ¶ 12(d)-(e).  Since this clause was invalid under Discover Bank, Zynga did not initially move

21  to compel arbitration but now does so following Concepcion.

22        There is no dispute that the FAA applies to the arbitration provisions at issue, or that

23  Concepcion overruled existing law prohibiting class action arbitration waivers in California.

24  However, Plaintiff opposes enforcement of the arbitration provisions on six separate grounds which

25  are addressed in turn.

26      **1.**     **Was there a binding contract requiring arbitration?**

27        Plaintiff argues that, for any arbitration agreement to be binding on her, Zynga must show a

28  clear mutual manifestation of assent.  See Windsor Mills, Inc. v. Collins & Aikman Corp., 25 Cal.

App. 3d 987 (1972).  She contends that she comes within the exception to the rule that failure to read

1  a contract is not an excuse "when the writing does not appear to be a contract and the terms are not

2  called to the attention of the recipient."  Marin Storage &  Trucking, Inc. v. Benco Contracting and

3  Engineering, Inc., 89 Cal. App. 1042, 1049-50 (2001).  Plaintiff argues that most internet and

4  software transactions use a "clickwrap" process to obtain a user's consent to terms of service

5  whereby the terms of service are presented on the screen and do not allow the user to proceed

6  without clicking to assent to the terms.  Parker Decl. Ex. E at 31.  Plaintiff contrasts this process

7  with the procedure for consenting to YoVille's TOS, where the terms of service are not visible on

8  the page but instead are linked by the blue hyperlink within a smaller grey font following the

9  "Allow" button, which also relates to allowing access to Facebook information.  Plaintiff contends

10 that this "modified clickwrap" was insufficient to put her on notice of what she was assenting to, so

11 she is not bound by the YoVille TOS or the Universal TOS.

12      She also argues that Zynga purposely used this modified clickwrap to avoid disrupting the

13 user experience (Parker Decl. Ex. E at 36) and that failure to include the terms of service on the page

14 itself, the smaller font, and the fact that the games are free, "creates a situation where it is doubtful

15 that any reasonably prudent consumer would know they were entering into a binding legal

16 agreement with Zynga by clicking "Allow.'"  Opp. at 14.  Zynga persuasively counters that the

17 dialogue box in question is Facebook's standard dialogue box presented to users wishing to access

18 any number of Facebook applications, and Zynga followed the norm for Facebook applications and

19 was not attempting to hide its terms of service.  Hanley Depo. at 83.

20      Plaintiff relies heavily on Specht v. Netscape Communications Corp., 306 F.3d 17 (2d Cir.

21 2002) (Sotomayor, J.), a case in which the plaintiffs downloaded free software plug-ins called

22 "Communicator" and "SmartDownload."  When the plaintiffs installed Communicator, they were

23 shown a scrollable text of the program's license agreement and were not permitted to proceed with

24 the installation until clicking "yes" to indicate acceptance.  Id. at 21-22 (referring to this as

25 presentation as a "clickwrap").  In contrast, when they began downloading SmartDownload, they

26 simply clicked "download" and were not presented with a clickwrap presentation referring to or

27 including the text of a license agreement.  Id. at 22.  The only reference to Smart Download's license

28 terms was located in text that was only visible if the user scrolled down to another screen, which

provided a hyperlink to another webpage that contained a list of links to license agreements for

**United States District Court**
For the Northern District of California

various products, the first of which was applicable to SmartDownload.  Id. at 23-24.  The Second

Circuit, applying California law, held that a reasonably prudent internet user would not have known

or learned of the existence of the license terms before agreeing to download the SmartDownload

software, and therefore the defendants did not provide reasonable notice of the license terms, so the

plaintiff's act of downloading the software did not manifest assent to the arbitration provision

contained in the license terms.  Id. at 20, 32 ("where consumers are urged to download free software

at the immediate click of a button, a reference to the existence of license terms on a submerged

screen is not sufficient to place consumers on inquiry or constructive notice of those terms"); see

generally id. at 28-35.  Plaintiff also relies on cases finding insufficient notice and consequently lack

of assent where a link to terms of service was simply included on the bottom of a website.  See, e.g.,

Hines v. Overstock.com, Inc., 668 F.Supp. 2d 362 (E.D.N.Y. 2009).

This case is unlike Specht and Hines, where there was no requirement that the plaintiff click

on anything referencing terms of service, and in the case of Specht would have had to scroll down to

learn of the existence of terms of service and then click several times to actually view the relevant

terms of service.  Instead, Plaintiff admits that she was required to and did click on an "Accept"

button directly above a statement that clicking on the button served as assent to the YoVille terms of

service along with a blue hyperlink directly to the terms of service.  Hanley Decl. pp 4; Seabolt

Decl. Ex. A (Hanley Depo.) at 100-101, 108.  Plaintiff's description of the "Accept" page's

reference to the terms of service in "grey fine print at the bottom of the page" is belied by the color

screenshot image provided by Zynga which makes the reference to terms of service and hyperlink

much more visible.  See Reply at p.3.  Further, Plaintiff has not provided any declaration or other

evidence that she did not see or agree to the TOS.

Cases addressing modified clickwrap presentations more similar to the one at issue here,

where a plaintiff was provided notice and an opportunity to review terms of service prior to

acceptance, have held them sufficient to put a plaintiff on notice of the terms to which she was

assenting.  Significantly, in Register.com, Inc. v. Verio, Inc., 356 F.3d 393 (2d Cir. 2004), the

Second Circuit distinguished its earlier decision in Specht on the basis that the facts of Specht "did

not compel the conclusion that its downloaders took the software subject to those terms because

there was no way to determine that any downloader had seen the terms of the offer."  Id. at 402.  In

contrast, the facts of Register.com were "crucially different" because the user saw the terms of the offer and admitted that it was aware of the terms. Id. The Second Circuit held that, where a plaintiff knew the terms on which the information was offered, there is no reason why enforceability of the terms should depend on whether the plaintiff was offered an "I agree" button. Id. at 403; see also Cairo, Inc. v. Crossmedia Services, Inc., 2005 WL 756610, *4-5 (N. D. Cal. April 1, 2005). While these cases differ somewhat since there is no admission here that Plaintiff was aware of what the terms of service were (though she admittedly could have clicked on a hyperlink to review them and does not deny that she did not do so), there was a click box for assent.

Because Plaintiff was provided with an opportunity to review the terms of service in the form of a hyperlink immediately under the "I accept" button and she admittedly clicked "Accept," the cases cited by Zynga are more relevant and persuasive that a binding contract was created here. Plaintiff's argument that she was not provided with sufficient notice of the contractual terms she was assenting to because of Zynga's modified clickwrap presentation, and therefore is not bound by any arbitration provision, fails in light of  recent caselaw holding that clickwrap presentations providing a user with access to the terms of service and requiring a user to affirmatively accept the terms, even if the terms are not presented on the same page as the acceptance button, are sufficient.

### 2. Did Zynga Waive It's Right to Compel Arbitration By "Electing" Litigation?

Plaintiff next argues that, even if she assented to the TOS by clicking "Accept," Zynga was required to elect to proceed in litigation or arbitration pursuant to the Universal TOS and elected litigation, and cannot change course now.  As explained above, the Universal TOS provides that a user could commence litigation in San Francisco or either party "may elect to have the Dispute . . . finally and exclusively resolved by binding arbitration."  Hanley Decl. Ex. C ¶ 12(a), (d).  Plaintiff argues that she sued in court and Zynga never moved to compel arbitration or even asserted an affirmative defense relating to arbitration, and instead proceeded with litigation for over a year and a half.  She contends that the TOS "clearly contains an election procedure that must occur at the initiation of the case" and nothing allows a party to change its mind later.  Opp. at. 16.  She argues that Zynga could have added a term allowing it the right to change its mind about arbitration following a change of law, but failed to do so.

**United States District Court**

For the Northern District of California

Plaintiff misconstrues the contract language of both the YoVille TOS (which does not provide for any election), and the Universal TOS (which says nothing about whether an election must occur as soon as litigation is initiated or when it must occur). Additionally, paragraph 13(b) of the Universal TOS prohibited Zynga from compelling arbitration of Plaintiff's class claims while the class waiver term was illegal under <u>Discover Bank</u>, so Zynga could not have "elected" arbitration at the outset. Further, as discussed in more detail below, a motion to compel arbitration prior to <u>Concepcion</u> would have been futile, so Zynga could not have elected to compel arbitration at the outset of this case. Therefore, this argument also fails.

### 3. Are Plaintiff's Claims Expressly Exempted From the Arbitration Clause?

Plaintiff contends that the arbitration clause contains an exception for "any Dispute related to, or arising from, allegations of theft . . ." Hanley Decl. Ex. C ¶12(f). She argues that all of her claims relate to "theft," because she alleges that Zynga intentionally tried to lure users to accept fraudulent special offers to drive up profit. However, during oral argument she was unable to explain how her allegations against Zynga regarding a fraudulent scheme to take money paid to third parties constitute theft by Zynga within the meaning of the agreement. To the contrary, Zynga persuasively pointed out that contract language should be interpreted in favor of arbitration, and the word "theft" (or any derivative) does not appear in the complaint nor is there a claim for theft or conversion. Though a somewhat close question, the Court finds that the complaint against Zynga cannot reasonably be construed as including a claim for "theft," and therefore the complaint is not expressly exempted from the arbitration clause.

### 4. Did the TOS Require that Plaintiff's Claims Be Litigated At the Time the Case Was Filed?

The Universal TOS section 12(e) forbids class action arbitrations. However, section 13(b) provides that "[i]f Section 12(e) is found to be illegal or unenforceable then neither you nor Zynga will elect to arbitrate . . . and such Dispute shall be decided by a court of competent jurisdiction with the County of San Francisco, California . . ." Plaintiff argues that, taken together, these contract terms mean that when her complaint was filed, she was required to litigate and neither party was allowed to elect to arbitrate. She argues that nothing in the agreement allows a later change in law

10

United States District Court

For the Northern District of California

1   to alter the course of the required litigation, but provides no support for this argument.  Further, it

2   contradicts her other arguments that Zynga could have elected arbitration from the outset so waived

3   its rights.  For similar reasons as the previous arguments, this argument also fails.

### 5.   Has Zynga Waived Its Right to Compel Arbitration?

5   Plaintiff next contends that Zynga waived its right to compel arbitration.  "A party seeking to

6   prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel

7   arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing

8   arbitration resulting from such inconsistent acts." Hoffman Const. Co. of Oregon v. Active Erectors

9   and Installers, Inc., 969 F.2d 796, 798 (9th Cir. 1992) (quoting Fisher v. A.G. Becker Paribas Inc.,

10   791 F.2d 691, 694 (9th Cir.1986)).  Plaintiff argues that all of these factors are present.

11   Plaintiff first argues that Zynga had knowledge of an existing right to compel arbitration and

12   could have pursued arbitration when her complaint was filed because the YoVille TOS was silent as

13   to whether class arbitration was available, so Discover Bank did not necessarily preclude it.  Zynga

14   persuasively counters that it cannot be deemed to have waived its right to compel arbitration when a

15   motion to compel prior to Conception would have been futile.  See Conover v. Dean Witter

16   Reynolds, Inc., 837 F.2d 867 (9th Cir. 1988) (reversing finding of waiver because it was

17   understandable that defendants waited until a Supreme Court decision changing the state of the law

18   because earlier motion would have been futile).  Zynga points to a post-Conception case from this

19   district denying an almost identical waiver argument where the arbitration agreement was similarly

20   silent as to class arbitration waiver.  In In Re California Title Insurance Antitrust Litigation, 2011

21   WL 2566449, * 3 (N.D. Cal. June 27, 2011), the court held that "prior to the ruling in Concepcion,

22   in the absence of class-wide arbitration provision, class arbitration would not have been available.  It

23   therefore would indeed have been futile for Defendants in this matter to have moved to compel

24   arbitration prior to the decision in Concepcion." Id.  As in California Title, because the YoVille

25   TOS was silent as to class arbitration waiver and the Universal TOS expressly precluded class

26   arbitration, an earlier motion to compel would have been futile so there was no earlier existing right

27   to compel arbitration.  See also Villegas v. U.S. Bancorp., C-10-1762-RS (N.D. Cal. June 20, 2011,

28   Order Grating Motion to Compel Arbitration) (finding no waiver of right to compel arbitration

where "defendants had every reason to believe that any motion to compel arbitration would have

11

1  been soundly rejected, given then governing California Supreme Court precedent that arbitration

2  provisions purporting to waive class action rights were invalid").

3       Plaintiff also argues that Zynga should have directly challenged the <u>Discover Bank</u> rule in

4  court, as AT&T did against Concepcion, or sought a stay when the Supreme Court granted certiorari

5  in that case.   Plaintiff cites two cases where parties moved to stay pending the Supreme Court's

6  <u>Concepcion</u> decision, but in both of those cases the issues were *identical* to <u>Concepcion</u> (i.e., the

7  exact same cell phone contract provision was at issue in all of the cases).  <u>See Kaltwasser v.</u>

8  <u>Cingular Wireless LLC</u>, 2010 U.S. Dist. LEXIS 62897 (N.D. Cal. June 21, 2010) (denying motion to

9  stay); <u>Gaspar v. AT&T Mobility LLC</u>, 2010 WL 4643277 (C.D.Cal. June 28, 2010) (granting stay).

10  The Court will not second guess Zynga's decision to wait for a Supreme Court ruling rather than

11  move for a stay when the Court granted certiorari.

12       Second, Plaintiff contends that Zynga acted inconsistently with its known right to compel

13  arbitration by actively participating in this litigation, not asserting any right to arbitration as an

14  affirmative defense, and moving to dismiss instead of to compel arbitration at the outset.  However,

15  only a few days after the <u>Concepcion</u> decision, Zynga acted promptly following the change in law by

16  ceasing litigation activity and moving to compel, so it acted consistently with its rights.

17       Third, Plaintiff argues that she will be prejudiced because she could have avoided litigation

18  and discovery costs if Zynga had moved earlier, and this effort "will have been for nothing if

19  Zynga's motion is granted."  Opp. at 22.  However,  <u>California Title</u> rejected similar allegations of

20  prejudice, noting that although the litigation had been ongoing for some time, substantive discovery

21  had only recently begun and trial was a year away.  <u>See In Re California Title Insurance Antitrust</u>

22  <u>Litigation</u>, 2011 WL 2566449, *3; <u>see also Villegas</u>, 10-1762-RS Dkt. No. 51 (no prejudice where

23  no cognizable injury resulting from defendant's decision not to move to compel arbitration prior to

24  <u>Concepcion</u>).  Similarly here, while the case was filed in November 2009, little happened for several

25  months, it was not until March 2011 that the parties consented to this Court and a class certification

26  hearing date was set, and no trial date has been set.  Plaintiff has not sufficiently established

27  prejudice.

28       For all of the foregoing reasons, Zynga did not waive its right to compel arbitration by

waiting until the Supreme Court's decision in <u>Concepcion</u>.

**United States District Court**
For the Northern District of California

1      **6.      Is the TOS Unenforceable As Unconscionable?**

2              Finally, Plaintiff argues that arbitration should not be compelled because, *even if* she

3      assented to the TOS, *and* it applies to the dispute *and* Zynga did not waive its right to compel

4      arbitration, it is unconscionable and thus unenforceable under California law.  Neither party

5      addresses the legal standard for unconscionability, but generally it includes both a "procedural" and

6      a "substantive" element.  See Armendariz v. Found. Health Psychcare Services, Inc., 24 Cal. 4th 83,

7      114 (2000).  To be unenforceable, a contract must be both procedurally and substantively

8      unconscionable. See id.

9              Neither party addressed procedural unconscionability in their papers and Plaintiff presented

10     no evidence that might support this argument.  During oral argument, when directly questioned on

11     this issue, Plaintiff still could not explain how the arbitration agreement was procedurally

12     unconscionable as applied to her.  Plaintiff's unconscionability argument fails on this basis alone,

13     regardless of whether she has shown some level of substantive unconscionability.

14             For the foregoing reasons, Zynga's Motion to Compel Arbitration and Stay Litigation is

15     GRANTED.

16     **IV.    Super Rewards Defendants' Joinder In Motion to Compel Arbitration and Stay
17     Litigation**

18             Plaintiff's FAC alleges that the Super Rewards Defendants are each "an agent, employee,

19     manufacturer, supplier, distributor, designer, engineer, retailer, seller, franchisee, representative,

20     partner, joint venturer, alter ego, and related or affiliated entity or provider of services to or on

21     behalf of each of the other Defendants" who partnered with Zynga to develop the deceptive special

22     offers that Plaintiff challenges in her complaint.  FAC ¶ 6, 8, 30.  The Super Rewards Defendants

23     contend that their role was limited to receiving and formatting advertisements (i.e., the challenged

24     "special offers") from third-parties and making them available to Zynga, and that they implemented

25     Zynga's policies regarding the value of in-game currency received for the offers and provided

26     limited customer service relating to the currency.  Marshall Decl. ¶ 2-7.

27     **A.      Does the Definition of "Zynga Parties" in the Limitation of Liability Section of
               YoVille TOS Give Super Rewards Defendants' Standing?**

28

       The Super Rewards Defendants have filed a joinder in Zynga's motion to compel arbitration

and stay litigation. They argue that the YoVille TOS indicates that they are third parties whose action are subject to the TOS because it defines "Zynga Parties" as Zynga and "its affiliates or subsidiaries, or any of their directors, employees, agents, attorneys, third-party content providers, distributors, licensees or licensors" and provides that Zynga Parties shall not be liable for damages. See Hanley Decl. Ex. A at 14-15. They further point out that the YoVille TOS requires arbitration of all claims. Id. at 17. However, Plaintiff persuasively counters that the waiver of liability provision of the YoVille TOS relied on by the Super Rewards Defendants, which defines them as "Zynga Parties," is separate and distinct from the arbitration provision, and the two portions of the TOS have to be analyzed separately to determine whether claims against the Super Rewards Defendants are arbitrable. The portions of the TOS relating to dispute resolution including arbitration do not even refer to the "Zynga Parties." The Super Rewards Defendants do not have standing to enforce the arbitration agreement simply by virtue of their having been defined as "Zynga Parties."

> **B.**     **Are the Super Rewards Defendants Non-Signatory "Agents" Entitle to Enforce The Arbitration Clause?**

The Super Rewards Defendants alternatively reason that, since Plaintiff defined them as "agents" in her FAC, and the YoVille TOS encompasses Zynga's "agents," they are covered by the arbitration provision of the YoVille TOS and have the right to enforce it under contract and agency principles even as non-signatories. The Super Rewards Defendants rely on Amisil Holdings Ltd. v. Clarium Capital Management LLC, 622 F.Supp. 2d 825, 830 (N.D. Cal. 2007), where the court enforced an arbitration agreement against a signatory where the non-signatories seeking enforcement were individual defendant officers and managers of the company that had signed the arbitration agreement with the plaintiff. The court held that "in certain circumstances, a nonsignatory can compel a signatory to arbitrate based on agency principles" and that "agents of a signatory can compel the other signatory to arbitrate so long as (1) the wrongful acts of the agents for which they are sued relate to their behavior as agents or in their capacities as agents (Letizia) and (2) the claims against the agents arise out of or relate to the contract containing the arbitration clause (Britton) (consistent with the language of the arbitration clause)." Id. at 831-32. The Super Rewards defendants argue that they are being sued for actions taken in their capacity as agents for Zynga and

14

**United States District Court**
For the Northern District of California

1   Plaintiff's claims arise out of the contract containing the arbitration clause because the YoVille TOS

2   applies to all "Zynga Parties."  However, <u>Amisil</u> is distinguishable on the basis that there the alleged

3   "agents" were corporate officers and managers, while here the alleged agents are corporate third

4   parties simply engaged in arms length business transactions with Zynga, and there is no evidence

5   that they are as closely related parties as a corporation and its officers/managers.

6        The Super Rewards Defendants also rely on <u>HCC Life Ins. Co. v. Managed Benefit</u>

7   <u>Administrators LLC</u>, 2008 U.S. Dist. LEXIS 46443, *9 (E.D. Cal. June 11, 2008) for the position

8   that a non-signatory agent who represents the principal in dealings with third parties can bind a

9   signatory to an arbitration agreement on agency principles.  However, <u>HCC</u> *denied* the non-

10  signatory independent contractor's motion to compel, because even though some of the non-

11  signatories' responsibilities were "akin to those of an agent acting on behalf of a principal,"

12  "California law does not permit such tenuous relationships . . . to bind nonsignatories to the

13  arbitration agreements of another." <u>Id</u>. at *9.  Here, the Super Rewards Defendants do not explain

14  how their responsibilities were more akin to agents than independent contractors, such as those at

15  issue in <u>HCC,</u> and instead rely almost exclusively on Plaintiff's allegations that they were "agents"

16  in her FAC.

17        Plaintiff counters persuasively that the allegations of her FAC identifying the Super Rewards

18  Defendants as "agents" turned out to be incorrect as discovery has since revealed that they are

19  actually "independent contractors" and the Super Rewards Defendants denied in their answers that

20  they were Zynga's agents.  <u>See</u> Parker Decl.  Ex. A; Answer ¶ 30.  Independent contractors do not

21  fall within the exception that non-signatory agents may be bound by an arbitration agreement.  <u>See</u>

22  <u>HCC Life Ins. Co. v. Managed Benefit Adm'rs LLC,</u> 2008 U.S. Dist. LEXIS 46443, *12 (E.D. Cal.

23  2008) (emphasizing parties' own definition of themselves as independent contractors).

24  **C.    Are the Super Rewards Defendants Third Party Beneficiaries of the YoVille**
         **TOS?**

25

26        On Reply, the Super Rewards Defendants argue for the first time that they should be allowed

27  to enforce the arbitration agreement because they are intended third party beneficiaries of the

28  agreement between Plaintiff and Zynga.  <u>See Balsam v. Tucows</u>, Inc., 627 F.3d 1158, 1161 (9th Cir.

    2010) (rejecting non-signatory's third party beneficiary argument because nothing in the agreement

                                                                                                      15

United States District Court
For the Northern District of California

1   supported argument that he was intended to benefit, and instead contract expressly disclaimed third

2   party rights).  This is improper new argument on Reply.  In any event, general references to "third

3   party content providers" throughout the YoVille TOS (though tellingly not in the dispute resolution

4   section and not in the Universal TOS) do not show that either signatory intended to give the Super

5   Rewards Defendants the benefit of the contractual arbitration provisions upon which they seek to

6   rely.

7           **D.      Does it Matter if the Claims Against the Super Rewards Defendants Relate to**
    the          **YoVille TOS**?

8

9           Alternatively, the Super Rewards Defendants contend that Plaintiff's claims are closely

10  related to the contractual relationship formed by the TOS so the arbitration provision should apply to

11  all parties to the litigation.  They argue that the YoVille TOS arbitration provision applies to claims

12  "arising out of or relating to these Terms of Use or any of the transactions contemplated herein or

13  relating to the Service . . ." so the claims against them are covered by this TOS.  See Hanley Decl.

14  Ex. A at 17.  However, the case they cite for this position does not relate to claims made against

15  non-signatory third-parties, regardless of whether the claims against the non-signatories are related

16  to a contract.  See Hopkins & Carley ALC v. Thomson Elite, 2011 U.S. Dist. LEXIS 38396, *9(N.D.

17  Cal. Apr. 6, 2011) (also no challenge to whether the parties had entered into the underlying

18  arbitration agreement, unlike here).  Thus, even if the claims against them would fall within the

19  scope of the agreement if they were signatories, this does not aid them in establishing that they can

20  enforce the arbitration agreement against Plaintiff as non-signatories.

21          **E.      Should the Non-Arbitrable Claims Against the Super Rewards Defendants Be**
                      **Stayed?**

22

23          The Super Rewards Defendants finally argue that, even if they cannot enforce the arbitration

24  provision, the Court should use its discretion to stay any non-arbitrable claims against them while

25  arbitration between Zynga and Plaintiff proceeds because an arbitration decision may affect the

26  outcome of the claims against them or make Plaintiff an invalid class representative, and will

27  conserve judicial resources because there is a common nucleus of facts for all of the defendants.  See

28  Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 20-21, n.3 (1983)

    (noting that: "In some cases, of course, it may be advisable to stay litigation among the

16

nonarbitrating parties pending the outcome of the arbitration. That decision is one left to the district court (or to the state trial court under applicable state procedural rules) as a matter of its discretion to control its docket.").

The Court agrees that the most efficient course of action is for this Court to stay the litigation as to the Super Rewards Defendants while arbitration between Plaintiff and Zynga goes forward. Therefore, the entire case is STAYED.

As discussed during oral argument, the parties shall meet and confer and report to the Court by no later than August 5, 2011 regarding the status of the case in light of the Court's rulings on Zynga and the Super Rewards Defendants' motions.  The pending motions to compel discovery, cross-motion to stay discovery, and motion to hear the cross-motion to stay on shortened time are DENIED AS MOOT.

**IT IS SO ORDERED.**

Dated: August 3, 2011

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge